FILED

2017 Mar-28  PM 01:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DIVISION OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| BRENDA SINGLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   7:15-cv-1122-TMP |
| | ) | |
| | ) | |
| MERCEDES-BENZ U.S. | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This cause is before the court on the motion for summary judgment filed by the defendant, Mercedes-Benz U.S. International, Inc. ("MBUSI").   Defendant seeks dismissal of plaintiff Brenda Singleton's claim that she was discriminated against based on her age, in violation of the Age Discrimination in Employment Act ("ADEA"), when her employment was terminated in January 2013.   This matter has been fully briefed, and the court has considered the evidence and arguments set forth by both parties.   The parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).   The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23.   There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim."   Id. at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)).   The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324.   "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   The substantive law will identify which facts are material and which are irrelevant.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."   Id. at 248.   "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   Id. at 249.   His guide is the same standard necessary to direct a verdict:   "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).   However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).   Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.   Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).   Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.   Anderson, 477 U.S. at 255.   The non-movant need not be given the benefit of every inference but only of every reasonable inference.   Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## FACTS

Viewing the admissible evidence in the light most favorable to the non-moving party, in this case the plaintiff, the following facts are relevant to the instant motion.

The plaintiff was 53 years old when she was terminated from MBUSI in January 2013. Singleton worked for MBUSI for more than 16 years at its manufacturing facility near Tuscaloosa, Alabama.  Over the course of her employment, she worked as an HRIS specialist, providing support to MBUSI's human resources and payroll departments, eventually transitioning to a position as an IT specialitst.  She was the designated project manager for several IT-related projects.  She was a salaried, exempt employee at all times relevant to this action.  She was required to work 80 hours during each two-week pay period, and had a start time of 8:30 a.m., but she had flexibility about working remotely or adjusting her hours.   She often worked more than 40 hours in a week.

Beginning in 2011, the IT functions at the plant were divided between "direct" and "indirect" applications, depending upon whether the IT application was involved directly with the manufacture of automobiles, or the application was involved in some function other than the manufacture of automobiles, such as human resources.  Plaintiff was assigned to the "Indirect Applications" group, where she was supervised by Ron Luster, who was 39 or 41 years old when Singleton was fired.[1]   Singleton did not want to be supervised by Luster, because she had heard "gossip" that he was "unreasonable," "doesn't treat people fairly," and always "wanted to be an expert."   An employee, who was "about" Singleton's age, told Singleton that Luster did not

---

[1]     Luster testified that he was born in 1971, but plaintiff testified that she understood his age to be 39.

properly value experienced employees.[2]   She testified that she was reluctant to work for him because he had a reputation for "managing people out."   (Pl.'s Depo. p.31, lines 18-22). Singleton asserts that Luster made age-biased statements about her when he introduced her to interns, saying she had been there longer than anyone.

Before working for Luster, Singleton had never been disciplined and had never been given a negative review.   She reported to Lisa Evans for about six months before transferring to Luster's IT group, and Evans gave Singleton a "successful" ranking in her 2011 evaluation.   Despite her good evaluations of Singleton, Evans told Luster, when Singleton transferred to his group, that Singleton was an under-performing employee who had trouble accomplishing tasks that required problem-solving.   In a 2012 review prepared by Luster, Singleton was described as an employee who "struggled to complete her work without dependency on others, failed to secure required approval before beginning new projects, executed job duties in an inconsistent fashion, and did not adequately address or solve problems as they arose."   She was ranked as "inconsistent" in the 2012 evaluation.

Employees at MBUSI who received a ranking of "inconsistent" or below were placed on a Performance Improvement Plan ("PIP").   Singleton spoke with Archie Craft, the vice president of human resources at MBUSI, who explained that, if she failed to successfully complete the PIP, she might be terminated.   Craft, at the time, was 60 years old.   He offered Singleton a buyout, which she considered but ultimately turned down.   She asked to be given an early retirement package,

---

[2]         To the extent this testimony by Singleton is offered to prove the truth of the alleged fact that Luster did not properly value experienced workers, it is inadmissible hearsay.   The testimony can be considered only for the limited purpose of showing what Singleton might have believed about Luster, regardless of whether, in fact, it was true.

about which Craft inquired with MBSUI.   He then told her MBSUI could not offer her an early retirement.

Singleton began the process of the PIP in August of 2012, which involved a series of seven meetings with Luster and, on some occasions, Dawn Burton, a team relations specialist at MBSUI. Her progress during the PIP meetings was deemed "unsatisfactory" by Luster.   Singleton felt that she was not treated fairly during the PIP meetings, because Luster would change her goals or expectations, a process she described as a "shell game."   Burton described Singleton's attitude at PIP meetings as defensive and angry, but Singleton said her behavior was caused by "great concern" and "distrust."   Singleton admits that she felt that the purpose of the PIP meetings was not to improve her performance but to lead to her firing.   Burton offered to meet with Singleton in additional sessions to counsel with her about improvements, but Singleton refused the additional help because she felt Burton was biased and would not maintain confidentiality.   The last PIP meeting with Luster was held before Thanksgiving of 2012.   Luster asked Singleton why she had not accepted the buyout offer, and told her that "he could not see how he could not fire" her.

The PIP sessions were not continued after Thanksgiving, and Singleton was told to undergo communication skills training.   Burton met with human resources senior manager, David Olive, age 49, and they agreed that the communication training should go forward before any further PIP meetings, but they did not tell Singleton that the reason for the communication skills training was to improve the efficacy of the PIP sessions.   Burton described the PIP meetings with Singleton as the "worst experience" she has ever had in implementing a PIP.

On January 10, 2013, Singleton was scheduled to lead a 10:30 a.m. conference call with two external contractors.   Singleton was the lead project manager for the project.   Singleton was

6

not on the conference call when it began.   Luster texted Singleton during the conference call, at 10:36 a.m., to remind her about it and that she was scheduled to lead it.   About five minutes later, Singleton joined the call via her cell phone, apologized for her tardiness, and said she had been "running around like a chicken."   After the conference call ended, Luster went to the IT Department to talk to Singleton about the call.   She was not there.   Luster had the gate records pulled to show when employees came in and out of the plant gates, and determined that Singleton had not been on the MBUSI premises during the call.[3]

The next day, on January 11, 2013, Singleton was not at her work area at 8:40 a.m.   Luster sent her a text asking if she was okay.   Singleton sent a text response three hours later, telling Luster that she was in the building.   Luster again checked the gate information, and determined that she was not on the premises at 8:40.   Singleton did arrive at work just a few minutes after the text was sent, but did not see the text and did not respond until 11:40.   She explained that her response was meant to indicate to Luster where she was at 11:40, not at 8:40.   Singleton concedes, however, that Luster believed that she had lied to him about her whereabouts, and that she had been tardy to work.

After these incidents, Olive asked Burton to investigate Singleton's time records and work history.   The review involved time records for the past six months.   Burton's investigation

---

[3]      Although Luster has testified that Singleton told him she was in the building during the call, Singleton disputes this, saying that Luster has confused the conversations about her whereabouts on January 10 and 11.   Singleton says that on January 10, she left work for an early lunch break before the conference call because her daughter was sick, and that she thought she would make it back in time for the call but did not.   She says that employees were allowed to take their lunch breaks at anytime they wanted. She says she joined the call from her car while driving back to the workplace.

showed that Singleton (1) had not satisfactorily performed during the PIP process; (2) had adjusted her work hours without approval from her supervisor, resulting in working less than 40 hours during 10 workweeks during the six-month period; (3) was paid for two days where the records show Singleton was not on company premises, and (4) was not approved to work from home or off-site.

On January 17, 2013, Olive and Burton met with Singleton to ask her about her time issues. She asked to retrieve her own log where she recorded her work off-site, but she was not allowed to get the log from her desk.   She told them that on the two dates that showed she had not been on premises that she had forgotten her badge and had manually signed in and out.   A later check revealed that she had manually signed in and out, but had worked less than eight hours on one of the two dates.   Singleton said that she did come in at 8:42 on January 11, but that she thought she had a 15-minute "grace period" and that 8:42 was, therefore, not tardy.   She told Olive that she wanted to examine her log to explain any time discrepancies, but she was not allowed to get the log from her desk.

When the meeting ended, Singleton was suspended pending further review, and was told to go home.   She was told to get her things, but she went to her desk, accessed her laptop, and shredded some documents.   She said she was merely logging off her laptop and shredding documents, which she did on a daily basis when leaving to go home.   She was told she should not be on the laptop or shredding documents, and was told to get her purse and coat and to leave.

Burton drafted a memorandum summarizing her findings and recommending that MBUSI discharge Singleton.   Olive reviewed the Burton memo, and decided to recommend discharge. The recommendation was approved by Craft.   On January 23, 2013, Singleton was called and told

that a decision had been made to terminate her employment.   A letter followed on January 24, 2013.   Singleton's job duties were initially assigned to Lee Roberts, a co-worker, who was then age 53.   Her position apparently was never actually filled, but her duties were taken over by several workers, some of whom were significantly younger than Singleton.

Singleton never complained about age discrimination while she was at MBUSI.   She felt that complaining would be futile.   Singleton says she was discriminated against on account of her age in that she was twice introduced to interns as the person with the longest tenure in her group of co-workers, which she found offensive.   She further asserts that Luster was "managing out" older employees, and that younger employees working under Luster seemed to be happier than the older employees.[4]   She also has provided a list of seventeen younger employees whom she contends committed the same workplace infractions of working less than 40 hours in some weeks and leaving work before completing an eight-hour day.   She claims knowledge of these certain circumstances bases on "raw data," but admits that she does not know all of the circumstances related to each of these employees.

## DISCUSSION

Defendant seeks summary adjudication of plaintiff's sole claim in this action, that her termination was discrimination because of her age.   Defendant asserts that plaintiff has failed to

---

[4]      Plaintiff makes reference in her declaration (doc. 25-1) to a promotion that she was never given an interview for and a 2007 incident in which she was replaced as a project manager by a younger person.   The complaint, however, does not state any claim for failure to promote, and the incidents do not reflect any age animus on the part of any person who played any role in her PIP or her termination in 2013, which is the basis of her claims.

prove her *prima facie* case of discrimination under the ADEA, and that, even if plaintiff has proven a *prima facie* case of age discrimination, she has failed to show that the stated, non-discriminatory reason for her termination was pretext and that the real reason was violative of the ADEA.

### A.   Discrimination Based on Age

The Age Discrimination in Employment Act prohibits employers from discriminating against employees over the age of 40 on the basis of their age. 29 U.S.C. §§ 623(a)(1), 631(a). Plaintiff has not offered any direct evidence of discriminatory animus, nor has plaintiff argued that there is any statistical pattern of discrimination.   She thus relies upon circumstantial evidence, and must proceed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).   See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000); see also  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); Jameson v. Arrow Co., 75 F.3d 1528, 1533 n. 3 (11th Cir.1996).   To prevail on a claim of disparate treatment on account of age, the plaintiff must demonstrate that "but for" her age, MBUSI would not have terminated her employment. Gross v. FBL Financial Services, Inc., 557 U.S. 167, 175, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009).   The standard enunciated in Gross requires a plaintiff to prove that a challenged employment decision would not have occurred but for the defendant's consideration of the plaintiff's age.   129 S. Ct. at 2350 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER AND KEETON ON LAW OF TORTS 265 (5th ed. 1984)).

**A.  *Prima Facie* Case**

    *1.  Comparator Evidence*

The Eleventh Circuit Court of Appeals has stated that a plaintiff establishes a *prima facie* case of age discrimination by showing that: (1) she was over the age of 40, (2) she was qualified for her position, (3) she was terminated from the position, and (4) she was treated less favorably than a similarly situated employee who was younger than she was, or she was replaced by a person who was substantially younger than she was.  See, *e.g.*, Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354 (1999);  Schoenfeld v. Babbitt, 168 F.3d 1257, 1267 (11th Cir. 1999), citing Welborn v. Reynolds Metals Co., 810 F.2d 1026, 1028 (11th Cir.1987) (per curiam).[5]

The defendant does not dispute that Singleton is a member of the protected group, was qualified for her job, and was terminated.   Thus, the first elements of the *prima facie* showing are established.   The only issue in dispute is whether the decisionmakers who terminated her were motivated by age animus.     The most common method for proving such discrimination is by offering a comparator: demonstrating that younger employees were treated more favorably than the older employee.   For example, in Damon, the fired employee provided evidence that within a year of his firing, four out of seven older, highly experience managers—all directly supervised by the same manager—were terminated or demoted, and were replaced with younger workers.   The court held that such a "pattern of firing and demoting *so many* older workers and replacing them

---

    [5]     While the language in Schoenfeld states that the position must be filled by a person outside of the protected class, it has been established that an age case can be proved simply by showing that the position went to a person younger than the plaintiff, even if that person also is over 40.   Carter v. City of Miami, 870 F.2d 578, 583 (11th Cir. 1989).

with younger workers, *by the relevant decision-maker during the same time period*, constitutes probative circumstantial evidence of age discrimination.   Damon, 196 F.3d at 1361.

In her complaint, Singleton listed seventeen employees she said were younger than she was at the time of her termination who were treated more favorably than she was.   She alleged that these younger employees "were not suspended or terminated for leaving the plant-site during scheduled work hours without asking permission to do so and/or who failed to work 40 hours in a work week." (Doc. 1, p. 7).   In her deposition, plaintiff conceded that she did not know who supervised most of the alleged comparators, when they were away from the work site, whether they had been given permission to work from home, whether they were in training off-site, whether they were on medical leave, whether they previously had been put on a PIP, or whether they received any form of discipline for missing work.   (Doc. 22-2, pp. 220-68).   She further agreed that she "would not be privy" to information about why an employee was off-site, or whether any employee had permission to be absent from the workplace.   (Id. at p. 232).   Finally, she has conceded that in many instances she does not know the age of the alleged comparator, or even what department each of these employees worked in.   (See, *e.g.*, doc. 22-2, p. 249-52).[6]   An employee who told Singleton that she felt she was treated unfairly because of her age, Norma Dunn, never worked for Luster, Olive, or Burton.   (Id. at 268).   Singleton's list of comparators

---

[6]      Plaintiff's declaration (doc. 25, para. 45), which asserts that the 17 alleged comparators were "substantially younger" that she was and that they failed to work 40 hours in a work week but were not suspended or terminated, is not worthy of any credence in light of her deposition testimony, in which she explicitly denies knowing such facts.   Plaintiff asserts that she sought this information in discovery, but that MBUSI failed to produce it, objecting that it was not relevant.   However, plaintiff never sought to compel the discovery.

was compiled simply by her recollection of records she had seen while working in human resources.

Plaintiff simply cannot establish that these are proper comparators.  The plaintiff must show that the relevant circumstances of the alleged comparator are "nearly identical" to those of the plaintiff.  The court of appeals reiterated less than a year ago in another age-discrimination case, "With respect to the third prong of the prima facie case, the plaintiffs and the employee they identify as a comparator must be similarly situated in all relevant respects. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004).   The comparator must be 'nearly identical' to the plaintiffs to prevent courts from second-guessing a reasonable decision by the employer. *Id.*"   Trask v. Secretary, Department of Veterans Affairs, 822 F.3d 1179, 1192 (11th Cir. 2016), *cert. denied sub nom.* Trask v. Shulkin, No. 16-513, 2017 WL 670223 (U.S. Feb. 21, 2017); see also Connor v. Bell Microproducts-Future Tech, Inc., 492 F. App'x 963, 965 (11th Cir. 2012) (unpublished) ("comparator must be nearly identical to the plaintiff").   Without additional information revealing whether the circumstances under which another, younger employee may have worked fewer than 40 hours in a workweek, it is not possible for the plaintiff to make a valid comparison.   For instance, it is not a valid comparison if the other employee was given permission to leave, or was on an off-site work or training assignment, or had a medical emergency.   Also, it is not a valid comparison unless the comparator-employee was on a PIP as plaintiff was.   Because the plaintiff has offered no evidence that the circumstances of each of the seventeen purported comparators were either "similarly situated" or "nearly identical" to those of the plaintiff, they cannot be used as comparators for purposes of the *prima facie* proof required under McDonnell

Douglas.  Accordingly, the court must find that the plaintiff has not demonstrated that anyone substantially younger engaged in similar misconduct and was treated more favorably.

### 2. *Circumstantial Evidence*

The failure to demonstrate a comparator, however, is not necessarily fatal to the plaintiff's establishment of a *prima facie* case.   As plaintiff's counsel points out, comparator evidence is not the only method by which a plaintiff may establish a *prima facie* case of discrimination.   The lack of comparator evidence, however, will support summary disposition of a claim in the absence of "sufficient circumstantial evidence of discriminatory intent."   Hunter v. Mobis Alabama, LLC, 559 F. Supp. 2d 1247, 1257 (M.D. Ala. 2008).   The court thus turns to an examination of the plaintiff's other circumstantial evidence.

Essentially conceding that she has no evidence that any similarly situated younger employee was treated more favorably than she was, Singleton asserts that she has other evidence from which a reasonable juror could infer that the decision to terminate her employment was based on age animus.   The first assertion of evidence that supports her conclusion regarding animus is that Luster asked her, during the course of the PIP, why she did not take the buyout that was offered to her by Craft.   She next asserts that Luster made remarks about her age by introducing her as the person with the most tenure on the team.   Singleton may have interpreted the statement as referring to her as an "oldie" but, while plaintiff clearly took offense at the statement, this court is not willing to say that references to a lengthy tenure, made once by Luster and once by another employee, are evidence from which a jury reasonably could infer that age animus was the motive behind the plaintiff's termination.   This is especially true because the termination decision ultimately was reached by Burton, Olive, and Craft.   Luster was not involved in it in any

significant way.   In the cases cited by the plaintiff, the remarks made were overt, with the decisionmaker calling the plaintiff "too old," or a "stubborn old woman."   (Doc. 24, p. 16).   A question to an employee who is undergoing a PIP, asking why she did not accept the buyout offered to her, is not a question that suggests that it was meant to be a comment that she was too old to continue working.   Similarly, plaintiff's testimony that younger workers supervised by Luster "appeared" to be happy, but older workers did not, is not sufficiently factual to support her claim. The speculative, vague, and conclusory nature of these "observations" does not constitute sufficient evidence to overcome the defendant's well-supported motion for summary judgment.

The same can be said for Singleton having "heard" that Luster was "managing out" older employees,[7] when the allegation is not supported by a single name or description of an employee who was unhappy, or who was managed out.   The case cited by the plaintiff to support the similar use of "rumors" as evidence in a pregnancy discrimination case is distinguishable.   The rumors there were buttressed by the fact that the supervisor treated that plaintiff differently after she told him she was pregnant, after having essentially ignored her absences and tardiness before she announced her pregnancy.   Hunter, 559 F. Supp. 2d at 1253.   After the plaintiff in Hunter announced she was pregnant, the supervisor said he did not want to "take care" of the pregnant employee anymore and that he "needed [a manager's] help to terminate her."   He also told the plaintiff in a meeting that he "can't afford to take care of an employee like you."   Nothing in the case suggests that the rumors alone were not enough to make a *prima facie* showing under the fourth prong.

---

[7]       It should be noted that Singleton's actual deposition testimony is that she heard that Luster had a reputation for "managing people out."   (Pl.'s Depo. p.31, lines 18-22).   Nothing in the actual testimony suggests that whatever Luster was doing was aimed at older workers.

While evidence other than comparator evidence of discrimination may be available to a plaintiff to support a *prima facie* case, that evidence must be of a different quality and quantity than that offered by Singleton.   This case is more like Greywoode v. Science Applications International Corp., 943 F. Supp. 2d 1355 (M.D. Ala. 2013).   In Greywoode, a district court recognized the exception to comparator evidence outlined in Hunter, but granted summary judgment in favor of the defendant where the plaintiff's evidence was "undeniably more tenuous" than the evidence presented in Hunter.   943 at 1376.   Singleton's evidence is based upon nothing more than rumors and her own conjectures based on very limited facts.   Accordingly, the court finds that the plaintiff has failed to meet her burden of demonstrating a *prima facie* case.

### B.   Pretext

Even if the plaintiff has presented a sufficient *prima facie* case, this merely requires the defendant to state its reasons for the action taken against the plaintiff.   Under the McDonnell Douglas burden-shifting test, MBUSI asserts that it has articulated a legitimate, non-discriminatory reason for Singleton's termination: that Singleton was absent from the workplace without permission, lied about her whereabouts to her supervisor, and failed to make adequate progress when placed on a PIP.   Even when a plaintiff has succeeded in making a *prima facie* showing of age discrimination, the presumption of discrimination that is raised by the *prima facie* showing may be rebutted if the employer offers a legitimate, nondiscriminatory reason for the employment action.   To satisfy this burden, "the employer need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had *not* been motivated by discriminatory animus."   Combs v. Plantation Patterns, 106 F.3d 1519,

1528 (11th Cir. 1997), quoting Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct.

1089, 1096, 67 L. Ed. 2d 207 (1981) (emphasis added).   Once the nondiscriminatory reason is

articulated, the burden shifts to the plaintiff to show that the reason is either not worthy of belief, or

that, in light of all the evidence, a discriminatory reason more likely motivated the decision than

the proferred reason.   Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998)

reh'g and reh'g en banc denied, 172 F.2d 884 (11th Cir. 1999), citing Combs v. Plantation Patterns,

106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).   She

must show not only that the articulated reason is false, but also that the true reason for the adverse

employment action taken against her was discriminatory.   See Clark v. Coats & Clark, Inc., 990

F.2d 1217, 1228 (11th Cir. 1993).   It is not the duty of the court to evaluate whether the decision

to terminate plaintiff was fair or wise; employers are free to make unfair or unwise employment

decisions so long as they do not violate anti-discrimination statutes.   See Elrod v. Sears, Roebuck

& Co., 939 F.2d 1466, 1470 (11th Cir. 1991).   In the context of an age-discrimination claim, the

Eleventh Circuit Court of Appeals has stated:

> Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.

Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991) (quoting Mechnig v. Sears,

Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted)); see also Nix v. WLCY

Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir.1984).   See also Chapman v. AI

Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).

In this case, plaintiff offers no evidence beyond conjecture and rumor that any decisionmaker held any animus toward older workers. Craft was older than plaintiff, at 60 years old, when the decision was made. Olive was 45 and Burton was 44. Luster, who set in motion the discipline process, was 39. A plaintiff has a "difficult burden" of showing that age more likely motivated an adverse decision where the "primary players" were "well over age 40 and within the class of persons protected by the ADEA." Elrod, 939 F.2d at 1471.

A showing of pretext also requires some evidence that the employer did not honestly believe that the employee engaged in the conduct that led to the termination. Here, although she denies being deceitful, the plaintiff admits that Luster honestly *believed* that she had been deceitful about her whereabouts on January 10 and 11, 2013. The court cannot say that a decisionmaker's belief (even if mistaken) that Singleton had come to work late on multiple occasions, had not worked the proper numbers of hours on several recent occasions, and had then lied that she was at work when she was not, would not have entered into a reasonable employer's evaluation of an employee's performance.

In short, plaintiff has failed to produce any evidence that shows that the stated reasons for her termination were not the real reasons, or that the real reasons for the firing was related in any way to Singleton's age. Accordingly, MBUSI's motion for summary judgment is due to be granted.

## **CONCLUSION**

Based upon the foregoing undisputed facts and legal conclusions, the magistrate judge finds that the motion for summary judgment filed by the defendant (doc. 20) is due to be

GRANTED, and that plaintiff's claims against this defendant are due to be DISMISSED WITH PREJUDICE.

A separate order will be entered.

DATED the 28th day of March, 2017.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE